UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALI MOHAMED ASHAG,

               Petitioner,

   v.

TODD BLANCHE, *et al.*,

               Respondents.

CASE NO. 2:26-cv-02493-GJL

ORDER ON PETITION FOR WRIT
OF HABEAS CORPUS

Petitioner Ali Mohamed Ashag, a native and citizen of Sudan, is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. Presently before the Court is Petitioner's Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release from immigration detention and injunctive relief concerning the manner by which he may be re-detained and the Government's ability to remove him to a country other than Sudan (*i.e.* "third-country removal").[1] Dkt. 1.

---

[1] The parties have consented to proceed in this matter before a United States Magistrate Judge. *See* Dkt. 4.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 1

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition (Dkt. 1) **IN PART** and **ORDERS** Petitioner's immediate release and permanent injunctive relief as set forth in the conclusion below.

## I.      FACTUAL BACKGROUND

Petitioner Ali Mohamed Ashag, a citizen of Sudan, entered the United States without lawful status on May 4, 2024. Dkt. 1 at 6; Dkt. 5 at 4; Dkt. 6-1 at 4, Ex. A. Petitioner was arrested upon entry to the United States by the U.S. Border Patrol ("USBP") and subsequently issued a Notice to Appear ("NTA") charging him as inadmissible under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). Dkt. 6-3, Ex. C. On that same day, Petitioner was released pursuant to an Order of Release on Recognizance ("OREC"). Dkt. 7 ¶ 6. He was released from custody the following day, May 5, 2024. *Id*. ¶ 7.

In his Petition, Petitioner asserts he traveled to Canada in the summer of 2024. Dkt. 1 at 6. On November 4, 2024, USBP encountered Petitioner at the Canadian border near Lynden, Washington, attempting to re-enter the United States without valid entry documents. Dkt. 7 ¶ 8. Petitioner claims he explained to agents there that he was seeking asylum. Dkt. 1 at 6. Petitioner was arrested at that time and transported to Sumas Border Patrol Station for further processing and an interview. Dkt. 7 ¶ 8. On November 5, 2024, Petitioner was served with a Warrant for Arrest of Alien (Form I-200), and transported to NWIPC, where he remains detained. *Id*. ¶ 9.

On September 29, 2025, Petitioner appeared for a merits hearing before an immigration judge ("IJ") in Tacoma Immigration Court. Dkt. 7 ¶ 10; Dkt. 6-2, Ex. B. The IJ denied Petitioner's application for asylum, but granted him Withholding of Removal under Section 241(b)(3) of the INA. Dkt. 7 ¶ 10; Dkt. 6-2, Ex. B. Petitioner was ordered removed to Sudan or, in the alternative, to Canada, with removal to Sudan withheld. Dkt. 7 ¶ 10; Dkt. 6-2, Ex. B. Both

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 2

parties waived the right to appeal, and the removal order became final on that day, September 29, 2025.[2] Dkt. 7 ¶ 10; Dkt. 6-2, Ex. B; *see also* 8 C.F.R. § 1241.1.

On October 9, 2025, the Canada Border Services Agency informed ICE that Petitioner had not been authorized to reside in Canada and refused his return thereto. Dkt. 7 ¶ 11. Petitioner was informed of Canada's refusal on December 19, 2025. *Id*. ¶ 12. On March 9 and April 6, 2026, ICE served Petitioner with a Form I-229(a), Warning for Failure to Depart, and was given instructions to assist in finding a third country for his removal. *Id*. ¶¶ 13–14. On the March 9, 2026, Form, Petitioner listed France and Great Britain as potential third countries. *Id*. ¶ 13. On the April 6, 2026, Form, Petitioner declined a personal interview and refused to sign all served documents. *Id*. ¶ 14. On May 27, 2026, Petitioner was placed on a third country removal list to Cameroon, but the flight was cancelled. *Id*. ¶ 15. Respondents assert that ICE intends to continue pursuing third country removal for Petitioner. *Id*. ¶ 16.

Petitioner remains detained at NWIPC. Dkt. 1. Petitioner has now been detained for over ten months since his order of removal became final on September 29, 2025. *Id*.

## II.     LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas relief, a habeas petitioner must prove by the preponderance of the evidence that he is "in custody in

---

[2] In the Petition, Petitioner states his order of removal became final on October 30, 2025 (*see* Dkt. 1 at 18); however, in his Traverse, he agrees with Respondents that the order became final on September 29, 2025 (*see* Dkt. 8 at 3). Thus, for purposes of discussion in this Order, the date of Petitioner's final order of removal is September 29, 2025.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 3

violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

### III.    DISCUSSION

**A.    Petitioner's Prolonged Detention is Unlawful and Petitioner is Entitled to Release**

Petitioner challenges the constitutionality of his detention pursuant to 8 U.S.C. § 1231, which takes effect once a final order of removal has been entered by an IJ.

The first ninety-day period following the entry of a final removal order is known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). To ensure a noncitizen's presence for removal and to protect the community from dangerous noncitizens who are awaiting removal, the INA mandates detention during the removal period. *See* 8 U.S.C. § 1231(a)(2) ("During the removal period, the [DHS Secretary] **shall** detain the [noncitizen].") (emphasis added). Once a ninety-day removal period has expired, as occurred in this case, detention of unremoved noncitizens is no longer mandatory; instead, continued detention is committed to the discretion of the DHS Secretary. 8 U.S.C. § 1231(a)(6).

There is no textual limit on the DHS Secretary's discretion to detain certain noncitizens beyond the initial ninety-day removal period. However, in *Zadvydas*, the Supreme Court interpreted the INA to authorize the detention of noncitizens subject to removal orders only for a period "reasonably necessary to secure [their] removal." 533 U.S. at 699. By interpreting the INA in this way, the Supreme Court avoided a "serious constitutional threat" posed by granting the discretionary authority to order noncitizens detained for indefinite durations. *Id*.

Under *Zadvydas*, an order of detention during the first six months after entry of a final removal order is presumptively reasonable. *Id.* at 701. After the presumptively reasonable 180-

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 4

day window has elapsed, courts apply a burden-shifting framework to determine whether a noncitizen's detention is of an indefinite duration in violation of the INA and due process. *Id.*

Within this framework, the noncitizen carries the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* The "good reason to believe" standard "does not place a burden upon the detainee to demonstrate [there is] no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that." *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (cleaned up). If the noncitizen provides good reason, the burden then shifts to the government to show removal remains likely within a reasonable timeframe. *Id.* If the government fails to submit sufficient rebuttal evidence showing that removal is likely to occur within the reasonably foreseeable future, then the noncitizen is entitled to habeas corpus relief. *Id.*

Here, a final order of removal was issued against Petitioner on September 29, 2025, and there is no dispute that Petitioner's detention has now extended beyond the presumptively reasonable period. *See* Dkt. 5 at 6–7 (acknowledging that Petitioner's detention has extended beyond six months). Thus, the Court analyzes Petitioner's indefinite detention claim under *Zadvydas*'s burden-shifting framework wherein Petitioner bears the initial burden of providing good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future.

      1.    <u>Petitioner Provides Good Reason to Question the Likelihood of his Removal in the Reasonably Foreseeable Future</u>

Petitioner contends there is good reason to believe his removal will not occur within a reasonable timeframe because, despite having a final order of removal since 2025 and being

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 5

detained since November 2024, there is no indication ICE is prepared to remove him to Sudan, Canada, the United Kingdom, or any other country. The Court agrees. *See, e.g.*, *Rea Hernandez v. Bondi*, No. 2:25-CV-02609-TL, 2026 WL 322874, at *4 (W.D. Wash. Feb. 6, 2026) ("Courts routinely find that noncitizens [who show they have obtained withholding of removal to the country designated in their removal order and have no ties to other countries] have met their initial burden under *Zadvydas*."). While Petitioner has been ordered removed to Sudan, he was simultaneously granted withholding of removal under INA § 241(b)(3). Dkt. 6-2, Ex. B. Furthermore, Respondents have failed to remove Petitioner to any third country for the past six months, and have not presented Petitioner with a travel document to any other third country. Dkt. 1 at 18–19; Dkt. 8 at 3. Accordingly, the burden shifts to Respondents to rebut Petitioner's showing with evidence.

2.      Respondents Have Not Rebutted Petitioner's Showing

Respondents have not met their burden of rebutting Petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future. In their Response, Respondents tender no evidence demonstrating any current or future efforts to remove Petitioner. *See* Dkts. 5–7. Nor do they make any argument for such. *See* Dkt. 5. Rather, Respondents provide only the statement, "ICE intends to continue pursuing third country removal and will work with the consulate of the country that accepts Petitioner to obtain a travel document." *Id*. at 6. This vague assertion that they "intend[ ] to continue pursuing" Petitioner's removal is insufficient to rebut Petitioner's showing. *Id*.; *see also Nguyen v. Scott*, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025) ("Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur."); *Kamyab v. Bondi*, No. 2:25-cv-00389-RSL, 2025 WL 2917522, at *4

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 6

(W.D. Wash. Oct. 14, 2025) (reasoning that "these generalized statements are far too vague and conclusory to rebut petitioner's showing in this particular matter" and granting habeas relief where respondents did "not [make] clear to the [c]ourt that it . . . submitted appropriate documentation [to effectuate removal].").

In sum, as Respondents offer no specific evidence demonstrating the likelihood of removal, they have not rebutted Petitioner's showing. Accordingly, Petitioner's continued detention is no longer authorized by the INA as construed in *Zadvydas* and runs afoul of due process.

**B.      Petitioner is Entitled to Immediate Release and, in Part, to Injunctive Relief**

Having determined that Petitioner's continued detention is no longer authorized, the Court must determine the proper scope of habeas relief. Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The Supreme Court in *Zadvydas* considered conditional release the appropriate remedy once detention exceeds the period reasonably necessary to effectuate removal. 533 U.S. at 699–700.

Here, the Court concludes that the appropriate relief for the unlawful detention of Petitioner is an order directing Respondents to release him from immigration detention under reasonable conditions of supervision, if any. Because the Court will grant the release of Petitioner on his first ground for relief, the Court declines to reach Petitioner's second ground for relief, which appears to be pled in the alternative.[3] *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 347 (1936) (explaining that courts should avoid resolving a constitutional question

---

[3] Petitioner's second ground for relief appears to request both Petitioner's release and separate injunctive relief. Dkt. 1 at 19–20.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 7

"unless absolutely necessary to a decision of the case") (internal citations and quotations omitted).

In his remaining grounds for relief, Petitioner invokes the Court's habeas and federal question jurisdiction to request injunctive relief. Dkt. 1 at 20–23. As these grounds are not remedied by his immediate release from detention and the requested injunctive relief is within this Court's jurisdiction to grant, the Court addresses each ground in turn. *See generally Schlup v. Delo*, 513 U.S. 298, 319 (1995) (habeas corpus relief is "at its core, an equitable remedy"); *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) ("[I]mmediate physical release [is not] the only remedy under the federal writ of habeas corpus.").

Specifically, Petitioner requests: (1) an injunction enjoining Respondents from re-detaining Petitioner without first holding a hearing before a neutral decisionmaker at which the Government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since Petitioner was previously released; (2) an injunction enjoining Respondents from re-detaining Petitioner without obtaining a valid travel document to a third country, providing the valid travel document to him and his counsel, and providing him with the opportunity to challenge the third country removal; (3) an injunction enjoining Respondents from removing Petitioner to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings; (4) an injunction enjoining Respondents from removing Petitioner to any third country where he is likely to face imprisonment or other punishment upon arrival; and (5) an injunction enjoining Respondents from subjecting Petitioner to GPS monitoring as a condition of his release, absent clear and convincing evidence that he is a flight risk or danger to the community and that no other alternatives mitigate those risks. Dkt. 1 at 23–24.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 8

1. <u>Re-detention</u>.

With respect to Petitioner's first request, the Court agrees that Respondents must comport with due process should they re-detain Petitioner. *See, e.g.*, *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1137 (W.D. Wash. 2025) ("[T]he fact that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."). However, the record does not contain sufficient argument or authority to establish that, in all circumstances preceding a future re-detention, the Due Process Clause would be violated in the absence of these specific procedures.

Therefore, the Court declines to prescribe a comprehensive procedural framework for any potential re-detention decision Petitioner may face.

2. <u>Third-Country Removal</u>

With respect to Petitioner's second and third requests, the Court finds that Petitioner is entitled to injunctive relief enjoining Respondents from removing Petitioner to a third country without notice and meaningful opportunity to respond.

"A number of courts in this district have recently addressed challenges to ICE's current third-country removal policy and have concluded that the policy violates due process." *Machuca Del Cid v. Mullin*, No. C26-1271-SKV, 2026 WL 1295891, at *5 (W.D. Wash. May 12, 2026) (citing *Baltodano v. Bondi*, No. C25-1958-RSL, 2025 WL 3484769, at *6 (W.D. Wash. Dec. 4, 2025), and *Abubaka v. Bondi*, No. C25-1889-RSL, 2025 WL 3204369, at *6 (W.D. Wash. Nov. 17, 2025), and *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727–29 (W.D. Wash. 2025)). Given the speed at which third-country removal can be executed once the decision to pursue such removal under this policy is made, these courts also find requests for injunctive relief ripe for adjudication even without evidence of the Government's active efforts to pursue third-county removal of the noncitizen. *Id.*; *see also Le v. Bondi*, No. 25-cv-2454-KKE, 2026 WL 309239, at *7 (W.D.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 9

Wash. Feb. 5, 2026) (noting that, under the current policy, a noncitizen "could be put on a plane without being told where he is going and would never have the chance to express a reasonable fear of persecution or torture or seek judicial intervention").

Thus, where, as here, the Government does not dispute a noncitizen is subject to the current third-country removal policy, an order enjoining execution of that policy is appropriate. *Savinsky v. Bondi*, No. 2:26-CV-00835-TL, 2026 WL 1191017, at *11 (W.D. Wash. May 1, 2026) (granting relief and rejecting the Government's argument that "[t]here is no indication at this time that ICE is seeking to remove Petitioner to a third country."); *see also Kumar v. Wamsley*, No. 25-cv-2055-KKE, 2025 WL 3204724, at *7 (W.D. Wash. Nov. 17, 2025) ("Where alleged harm 'is directly traceable to a written policy …there is an implicit likelihood of its repetition in the immediate future.'") (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 986 (9th Cir. 2007)); *but see Edin v. Blanche*, No. C26-1208-MLP, 2026 WL 1256141, at *6 (W.D. Wash. May 7, 2026) (denying request for injunctive relief as unripe absent individualized evidence suggesting petitioner's removal to third country is imminent).

The Court otherwise denies Petitioner's request to enjoin Respondents from re-detaining Petitioner without obtaining a valid travel document to a third country, providing the valid travel document to him and his counsel, and providing him the opportunity to challenge the third country removal. The record does not contain sufficient argument or authority to establish that, in all circumstances preceding a future re-detention, the Due Process Clause or any statutory authority would be violated in the absence of these specific procedures.

### 3.   Punitive Third-Country Removal

With respect to Petitioner's fourth request, the Court finds that Petitioner is entitled to injunctive relief enjoining Respondents from removing him to a third country where he is likely to face imprisonment or other punishment upon arrival.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 10

Petitioner alleges his removal to a third country where he is likely to be imprisoned or harmed constitutes unlawful punishment in violation of the United States Constitution. Dkt. 1 at 21–23 (citing *Wong Wing v. United States*, 163 U.S. 228, 236–38 (1896)). Respondents contend that Petitioner's claim on this ground should be denied because it is speculative. Dkt. 5 at 9–10. However, courts in this District have granted relief on similar claims, holding that the Government's third-country removal policy is punitive and therefore unconstitutional under *Wong Wing*. *Nguyen v. Hermosillo*, No. 2:26-CV-00335-GJL, 2026 WL 538497, at *8 (W.D. Wash. Feb. 26, 2026); *See Baltodano v. Bondi*, 815 F. Supp. 3d 1191, 1201–05 (W.D. Wash. Dec. 4, 2025); *Abubaka v. Bondi*, No. 25-cv-1889RSL, 2025 WL 3204369, at *7–8 (W.D. Wash. Nov. 17, 2025); *Nguyen*, 796 F. Supp. 3d at 732–35; *but see Somsanuk v. Bondi*, No. 26-CV-48-MLP, 2026 WL 221139, at *6 (W.D. Wash. Jan. 28, 2026) (denying injunction categorically prohibiting removal to "*any* third country," concluding such a claim was overbroad (emphasis added)).

These courts have taken judicial notice of "statements made by government officials, both on social media and to the press, acknowledging that deportees to third countries are being imprisoned and expressing intent to continue that practice." *Baltodano*, 815 F. Supp. 3d at 1202 (quoting *Nguyen*, 796 F. Supp. 3d at 733–34). The court in *Nguyen* also noted that "[o]ther courts across the country have recognized that the [G]overnment is intentionally removing individuals to countries where they will be imprisoned." *Nguyen*, 796 F. Supp. 3d at 734 (citations omitted).

The courts in *Baltodano* and in *Abubaka*, relying heavily on the *Nguyen* reasoning, concluded that Respondents' "practice of third-country removal paired with imprisonment is

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 11

intended to be punitive and thus violates due process under *Wong Wing* and *Zadvydas*." *Baltodano*, 815 F. Supp. 3d at 1203 (cleaned up); *Abubaka*, 2025 WL 3204369, at *8.

In line with this District's recent authority, this Court similarly concludes that Respondents' documented practice of third-country removals paired with imprisonment violates due process. Petitioner is therefore entitled to the requested order that Respondents not remove him to a third country where he is likely to face imprisonment or other punishment upon arrival.

          4.       <u>GPS Monitoring</u>

With respect to Petitioner's fifth request, the Court finds that Petitioner is entitled to injunctive relief enjoining Respondents from subjecting Petitioner to GPS monitoring as a condition of his release.

In so finding, the Court follows the reasoning set forth in *Singh v. Noem*, 2:26-cv-0302-JLR, 2026 WL 879247, at *5 (W.D. Wash. Mar. 31, 2026). In *Singh*, the court found arbitrary placement of GPS monitoring would violate due process in a case where the petitioner had been previously released after a determination that he did not present a danger to the community or risk of flight, and the Government had not placed the petitioner on GPS monitoring as a condition of his prior release. *Id*. (citing *Palacio v. Hermosillo*, No. 2:25-cv-1983-RSM-MLP, 2025 WL 4033287, *2-3; 10 (W.D. Wash. Dec. 22, 2025)). Further, the court found that, in response to the habeas petition, the Government made no assessment that supported a change to that determination. *Id*. As a result, the court found it appropriate to direct the respondents to refrain from subjecting the petitioner to GPS monitoring as a condition of his release. *Id*.

The conditions considered in *Singh* are present here as well. Petitioner was previously released on an OREC without GPS monitoring. Dkt. 7 ¶ 6. Respondents have not alleged here that Petitioner presents a flight risk or danger to the community. *See* Dkt. 5. And Respondents

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 12

have made no assessment in their Response that supports a change to the previous determination to release Petitioner without GPS monitoring. *See id.*

Indeed, Respondents do not claim Petitioner has ever failed to report to ICE, and the tendered record demonstrates Petitioner has no criminal history. *See* Dkt. 5; Dkt. 6-1 at 4, Ex. A (DHS Record of Deportable/Inadmissible Alien noting "Negative" as to Petitioner's criminal history). Petitioner is therefore entitled to the requested order that Respondents shall not subject Petitioner to GPS monitoring as a condition of his release, absent clear and convincing evidence that he is a flight risk or danger to the community and that no other alternatives mitigate those risks.

### IV.    CONCLUSION

Based on the foregoing, the Court **GRANTS** the petition for writ of habeas corpus (Dkt. 1) and **GRANTS IN PART** Petitioner's request for a permanent injunction. The Court **ORDERS** as follows:

(1)    Respondents **SHALL** immediately release Petitioner Ali Mohamed Ashag from custody on reasonable conditions of supervision, if any;

(2)    Respondents **SHALL** file a declaration with the Court within **twenty-four hours** of this Order, confirming that Petitioner has been released from immigration detention and providing the date and time of his release;

(3)    Respondents **SHALL NOT** subject Petitioner to GPS monitoring as a condition of his release, absent clear and convincing evidence that Petitioner is a flight risk or danger to the community and that no other alternatives mitigate those risks;

(4)    Respondents **SHALL NOT** remove Petitioner to a country other than the country designated in his Order of Removal without first providing him with written notice and a meaningful opportunity to respond in a reopened removal proceeding before an immigration judge; and

(5)    Respondents **SHALL NOT** remove Petitioner to any third country where he is likely to face imprisonment or other punishment upon arrival.

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 13

Finally, the Court will entertain post-judgment requests for attorney's fees, as requested in the Petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 11th day of August, 2026.

Grady J. Leupold
United States Magistrate Judge

ORDER ON PETITION FOR WRIT OF HABEAS
CORPUS - 14